**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE No. | 19-21972 (JJT) |
| | ) | | |
| LINDA A. PELLECHIA, | ) | CHAPTER | 13 |
|    Debtor. | ) | | |
| | ) | RE: ECF Nos. | 91, 105, 106, 114 |
| | ) | | 115, 123 |

**MEMORANDUM OF DECISION ON WELLS FARGO BANK,
NATIONAL ASSOCIATION'S MOTION TO DISMISS AND DEBTOR'S
MOTION TO DISMISS CASE AND THIS COURT'S ORDER TO SHOW CAUSE**

I.    INTRODUCTION

Before the Court are three related matters: a Motion to Dismiss Case pursuant to 11 U.S.C. § 1307(c) or, in the alternative, a Motion to Grant Relief from the Automatic Stay pursuant to 11 U.S.C. § 362(d) (ECF No. 91), which was filed first on May 11, 2020, by Wells Fargo Bank, National Association, as Trustee ("Wells Fargo"); a Motion for Voluntary Dismissal Under 11 U.S.C. § 1307(b) Without Prejudice (ECF No. 105) filed on May 27, 2020, by Linda A. Pellechia (the "Debtor")[1]; and this Court's own June 1, 2020 Order to Show Cause Why the Case Should Not Be Dismissed (ECF No. 114). A hearing on these matters was held on June 9, 2020, wherein the various parties were able to advance their respective arguments before the Court. In reliance upon the parties' various uncontested representations made during the hearing and upon matters subject to judicial notice, the Court took the matter under advisement.

At the outset, there is no disagreement among the parties as to whether this case should be dismissed, rather the material issue under consideration is whether, in light of the Debtor's

---

[1] Although it would be appropriate to refer to the Debtor as the "Defendant" in her state court foreclosure action, for the sake of clarity and uniformity throughout this Decision, the Court refers to Ms. Pellechia as the "Debtor" in that proceeding, as well as the various other proceedings discussed herein.

past four bankruptcies,[2] the filing of this case is part of an effort by the Debtor to forestall her state court foreclosure case (originally filed over twelve years ago in the Connecticut Superior Court) and, therefore, warrants additional equitable safeguards in the form of a two-year bar to filing and *in rem* relief. For the reasons stated herein, Wells Fargo's Motion to Dismiss with Prejudice is GRANTED, and the Debtor's Motion to Dismiss Without Prejudice is GRANTED in part and DENIED in part. With respect to the Court's own Motion to Show Cause and Wells Fargo's alternative request for stay relief, the Court hereby also GRANTS Wells Fargo *in rem* relief under 11 U.S.C. §§ 362(d)(1) and (4).

II.   BACKGROUND

In establishing the relevant background and facts, the Court has taken judicial notice of publicly filed court documents related to the present proceeding, in addition to matters of public record such as the docket and orders in the state court foreclosure proceeding and the dockets and orders in the Debtor's various other bankruptcy and civil proceedings in federal court. *See OneWest Bank, FSB* v. *Pellechia, Linda A.*, WWM-CV08-5002482-S (Conn. Super. Ct. 2008), *In re Linda Pellechia*, Case No. 08-71592, U.S. Bankruptcy Court, Eastern District of New York (Central Islip), *In re Linda Pellechia*, Case No. 09-70327, U.S. Bankruptcy Court, Eastern District of New York (Central Islip), *Linda Pellechia* v. *OneWest Bank, FSB et al.*, 3:11-CV-1587 (D. Conn. 2012), and *In re Linda Pellechia*, Case No. 14-21785, U.S. Bankruptcy Court, District of Connecticut (Hartford).[3]

1. The Debtor filed the present Chapter 13 case on November 18, 2019.

---

[2] *See* Clerk's Evidence of Repeat Filings, ECF No. 5.
[3] While the Debtor strenuously objected to the Court taking judicial notice of the aforementioned proceedings during the June 9, 2020 hearing, ECF No. 124, arguing that those where different issues decided under different facts, the Court disagrees and finds that these proceedings are both relevant and highly probative with respect to the issues now under consideration.

2. On January 9, 2020, Wells Fargo filed proof of claim 5-1, wherein it listed the debt as $805,807.03, which is secured by a mortgage on property located at 187 South Canterbury Road, Canterbury, CT (the "Property"). The Debtor objected, arguing that Wells Fargo's secured status and corresponding proof of claim was improper because Wells Fargo cannot provide proof of its secured interest or, alternatively, that the alleged debt has been discharged in a prior bankruptcy. *See* ECF No. 47.

3. In the Debtor's present schedules, she lists the Property as her primary residence, with its value as "undetermined." *See* ECF No. 8, Schedule A/B.

4. In her Amended Schedule F, the Debtor lists Wells Fargo as an unsecured creditor with a total claim of $1.00, which she lists as "disputed" and as "discharged." *See* ECF No. 19.

5. The Chapter 13 Trustee has raised an objection to the Debtor's Plan, arguing that it is not feasible, and, among other deficiencies, it does not treat Wells Fargo's secured claim in any fashion. *See* ECF No. 106.

6. According to the Chapter 13 Trustee, although the Debtor is current with her plan payments, which total approximately $250 a month, if the Debtor was to include Wells Fargo's secured claim, the payments would increase to $9,365 a month.[4] *See id.*

7. A state court foreclosure action bearing the caption *OneWest Bank, FSB* v. *Pellechia, Linda A.*, WWM-CV08-5002482-S (Conn. Super. Ct. 2008) (the "Foreclosure Action"), was filed in Connecticut Superior Court on February 13, 2008, by a predecessor in

---

[4] In her Objection to Confirmation the Chapter 13 Trustee specifically states: "The Plan's treatment of secured creditors violates Section 1325(a)(5) of the Bankruptcy Code. The Plan provides for various liens to be deemed unsecured, but the Debtor has not filed a motion to determine status or avoid liens. The Plan purports to modify the rights of a mortgage interest in Debtor's single family residence." ECF No. 106., p. 1. The Trustee's Objection further states that "[t]he Plan is not feasible under Section 1325(a)(6) of the Bankruptcy Code. The Debtor's excess [monthly] income over expenses, according to Schedules I and J, is $551.00. The Plan payment would need to be $9365.00 over a period of 60 months solely to cure the $505,710.07 mortgage arrearage." *Id.*

3

interest, IndyMac Bank, in order to foreclose on a note that was secured by a mortgage on the Property.

8. Less than two months after IndyMac filed the Foreclosure Action, on April 3, 2008, the Debtor filed for Chapter 13 bankruptcy protection (the "2008 Bankruptcy Case") in the Eastern District of New York.[5] The case was ultimately dismissed (without objection from the Debtor) on December 2, 2008 because the Debtor failed to provide certain information to the trustee, which impeded the trustee's ability to administer the case without prejudice to creditors. *See* 2008 Bankruptcy Case, ECF No. 23.

9. The 2008 Bankruptcy Case was the first of four unavailing bankruptcies that the Debtor has filed during the pendency of the aforementioned Foreclosure Action. *See* Clerk's Evidence of Repeat Filings. ECF No. 5.

10. Seven days after IndyMac Bank filed a motion for judgment of strict foreclosure on January 13, 2009 in the Foreclosure Action, the Debtor filed her second petition for bankruptcy protection in the Eastern District of New York, this time under Chapter 7 of the Bankruptcy Code (the "2009 Bankruptcy Case").[6]

11. In the Debtor's petition she represented that the value of the Property was approximately $300,000, identified IndyMac Bank as a secured creditor and listed the amount of the debt as $346,000, with an unsecured portion of $47,000. *See* 2009 Bankruptcy Case, ECF No. 9, Schedule D.

---

[5] *See In re Linda Pellechia*, Case No. 08-71592, U.S. Bankruptcy Court, Eastern District of New York (Central Islip).

[6] *See In re Linda Pellechia*, Case No. 09-70327, U.S. Bankruptcy Court, Eastern District of New York (Central Islip). As noted by the state court in its subsequent ruling on a motion for summary judgment, IndyMac Bank's motion for judgment of strict foreclosure was granted on January 26, 2009. In the Memorandum of Decision on the motion for summary judgment, the state court was provided no notice of the Debtor's bankruptcy at the time it granted the motion. *See* Dkt. 270.00. Due to the subsequent procedural history of the Foreclosure Action, this procedural defect is of no consequence to the present case.

12. On February 26, 2009, IndyMac Bank moved for stay relief in the Debtor's 2009 Bankruptcy Case under 11 U.S.C. § 362(d) in order to pursue its remedies in the Foreclosure Action (*see* 2009 Bankruptcy Case, ECF No. 16). The bankruptcy court granted the motion on March 30, 2009, finding that relief from stay was warranted for lack of adequate protection under 11 U.S.C. § 362(d)(1). *Id.*, ECF No. 25. The Debtor received her Chapter 7 discharge on July 31, 2009.

13. In May of 2009, after relief from stay had been granted by the bankruptcy court, IndyMac Bank filed a motion to reset the law days in the Foreclosure Action, in addition to filing a motion to substitute party (Foreclosure Action, Docket Nos. 117.00, 118.00), which were both granted on June 9, 2009 (*id.*, Docket No. 123.00). Thereafter, One West Bank, F.S.B. ("OneWest") was substituted as plaintiff in lieu of IndyMac, in recognition of its acquisition of the assets of IndyMac Bank. *See id.*, Memorandum of Decision, Docket No. 270.00, p. 3; *see also* Wells Fargo's Motion to Dismiss with Prejudice, ECF No. 91, p. 5 (Wells Fargo, as trustee and as the current holder of the Note, has indicated to the Court that it has decided to complete the Foreclosure Action in the name of the assignor, OneWest).[7]

14. Prior to the running of the law day in the Foreclosure Action, OneWest moved to vacate the judgment of strict foreclosure in order to pursue an out of court workout with the Debtor, which the state court granted. *Id.*, Docket No. 138.00.

15. The Debtor's out of court workout failed, and on May 7, 2010, OneWest filed a motion for judgment of strict foreclosure, which to date remains pending. *Id.*, Docket No. 143.00.

---

[7] To the extent that this implicates Wells Fargo's standing, it is a matter a best addressed by the state court in the Foreclosure Action.

16. Additionally, on July 9, 2010, OneWest filed a motion for summary judgement as to liability only. *Id.*, Docket No. 162.00.

17. While the aforementioned motions were pending in the Foreclosure Action, in October of 2011, the Debtor filed a civil action in Connecticut District Court (2011 District Court Action), claiming, on public policy grounds, that OneWest, among others, violated CUTPA and the FDCPA by pursuing the Foreclosure Action against her. The District Court dismissed the case on August 24, 2012, finding that the Debtor's claims were either time barred or were without merit. *Linda Pellechia* v. *OneWest Bank*, *FSB et al.*, 3:11-CV-1587 (2012), ECF No. 91, pp. 19, 27.

18. On February 14, 2014, the state court granted OneWest's motion for summary judgement as to liability. Foreclosure Action, Docket No. 270.00. In its memorandum of decision, the state court found that the Debtor was liable under the note, that the Debtor was in default, and that the substitute plaintiff possessed the note and thus had standing to sue. *Id.*[8] A motion to reargue was filed by the Debtor and was subsequently denied. *See id.*, Docket No. 272.10.

19. On September 8, 2014, one day prior to the third continued hearing on OneWest's motion for judgment strict foreclosure in the Foreclosure Action (*see id.*, Docket No. 311.10),[9]

---

[8] The state court concluded that there were "no fact-based challenge[s] to counsel's representation [that it possessed the note]. Nor [was] there any fact-based challenge to the chain of title route to plaintiff's standing to bring this action." Foreclosure Action, Memorandum of Decision on plaintiff's motion for summary judgment, Docket No. 270.00, p. 10.

[9] In the state court's order denying the Debtor's motion for continuance, the state court held that "Counsel entered his appearance after the September 9 hearing was already scheduled. That is the third hearing on a pending motion for judgment of strict foreclosure which this court has conducted, in a case now six and a half years old. His appearance is in addition to that of his client. If he cannot attend, she will have to conduct the case without him." Foreclosure Action, Docket No. 311.10.

the Debtor filed her *third* bankruptcy petition, this time seeking protection under Chapter 7 of the Bankruptcy Code in the District of Connecticut (the "2014 Bankruptcy Case").[10]

20. In the Debtor's Amended Schedules, she lists a secured claim of $347,900, secured by the Property (valued at $630,000). *See* 2014 Bankruptcy Case, ECF No. 63.

21. On October 2, 2014, the Court denied the Debtor's discharge due to her prior discharge in the 2009 Bankruptcy Case. *See id.*, ECF No. 14.

22. On September 9, 2016, the trustee for the Debtor's 2014 Chapter 7 Estate abandoned "any interest the estate had in the Debtor's claims and defenses that were asserted by the Debtor in the State of Connecticut Superior Court foreclosure case . . . [because after investigating] the Debtor's claims and defenses in said foreclosure case, the Trustee determined that she did not have standing to avoid the mortgage as a lien creditor as provided in 11 U.S.C. Section 544 . . . ." *Id.*, ECF No. 71.

23. On September 20, 2016, some eleven days after the trustee abandoned the Property, and while her 2014 Bankruptcy Case in Connecticut remained open, the Debtor returned to the Bankruptcy Court for the Eastern District of New York and filed a "Motion to Open Bankruptcy as Creditor Obtained Secured Interest by Fraud" ("Motion to Reopen 2009 Bankruptcy Case"), wherein she requested a continuation of the automatic stay.

24. Approximately four months later, on January 30, 2017, the Debtor filed an adversary proceeding in her 2014 Bankruptcy Case against Ocwen Loan Servicing ("Ocwen"), as servicer for Wells Fargo, challenging the extent and validity of its secured interests against the Property. *See Linda A. Pellechia* v. *Wells Fargo, N.A., as Trustee, et al*, Adv. Pro. 17-02006, CTB (2017).

---

[10] *See In re Linda Pellechia*, Case No. 14-21785, U.S. Bankruptcy Court, District of Connecticut (Hartford).

7

25. The adversary proceeding was ultimately withdrawn by the Debtor on September 26, 2017, while the Court was in the process of deliberating on a pending motion to dismiss filed by the defendants.

26. On February 8, 2017, in the Debtor's main case, this Court granted Ocwen's motion for relief from stay (*see* 2014 Bankruptcy Case, ECF No. 116) citing the legal consequences of the Trustee's abandonment of the Property, which the Court found indisputably terminated the stay as it related to property of the estate, the Debtor and the Debtor's interest in the Property under 11 U.S.C. § 362(c)(1) and (2). *Id.*, ECF No. 117. In its Ruling, the Court held: "[A]s the State Court has entered a summary judgment decision on the Debtor's liability in a long pending, vigorously contested foreclosure proceeding, there is also good cause under applicable case law to allow that proceeding to advance to its conclusion . . . . The State Court is uniquely positioned in these circumstances to hear and decide any remaining issues which would justify or preclude the entry of a final judgment of foreclosure in the Movant's favor." *Id.* (citation omitted).

27. The Debtor appealed the Court's Ruling granting stay relief to Ocwen to the District Court. *See id.*, ECF No. 124.

28. On April 13, 2017, the Bankruptcy Court for the Eastern District of New York granted the Debtor's motion to open her 2009 Bankruptcy Case for the limited purpose of allowing her to amend her bankruptcy schedules to add the unscheduled pre-petition creditors. *In all other respects the court refrained from granting the relief requested in the Motion to Reopen 2009 Bankruptcy Case. See* 2009 Bankruptcy Case, ECF No. 54.

29. On December 1, 2017, the District Court affirmed the Bankruptcy Court's Ruling granting stay relief to Ocwen. *See In re Linda A. Pellechia* v. *Ocwen Loan Servicing, LLC*, Case No. 3:17-cv-336 (AWT), ECF Nos. 28, 29.

30. The Debtor's 2014 Bankruptcy Case was closed without discharge on March 1, 2018.

31. On August 26, 2019, the state court issued a twenty-eight page ruling on two motions filed by the Debtor in the Foreclosure Action: a motion to dismiss and a motion to vacate the court's ruling on the plaintiff's motion for summary judgment as to liability. Relevant to this proceeding, the state court found that the Debtor had fought a long war of attrition against OneWest, that the Debtor's standing and procedural challenges were without merit[11] and that the Debtor had engaged in forum shopping and serial bankruptcy filing in order to frustrate the foreclosure process.[12]

32. Critically, the state court found that the "[Debtor's] underhanded manipulation of bankruptcy procedure [did] not alter the fact that plaintiff [was] the holder of the note and mortgage that [were] at issue in [the] case, that its security interest in her Canterbury property [had] not been invalidated, and thus that plaintiff [did] not lack standing as she asserts." Foreclosure Action, Memorandum of Decision, Docket No. 423.00, p. 16.

33. The state court also ordered the Debtor to file no further "pleadings, motions, exhibits, affidavits, or documents unless: 1) The same is filed by her attorney of record . . . and 2) Upon the understanding that no such filing will give rise to a continuance of the hearing

---

[11] According to the state court, the Debtor claimed that, "in 2016 she filed a motion to open the 2011 disposition in the New York bankruptcy court, and that the court's order granting her motion served to extinguish plaintiff's security interest." Foreclosure Action, Memorandum of Decision, Docket No. 423.00, p. 12.

[12] While not part of a final judgment, this Court nonetheless finds the following finding by the state court probative with respect to the issue now before the court: "Most unusually, she states here, under oath, that she [returned to the New York bankruptcy court] because 'the movant [herself] now shops the bankruptcy court for a different judge ...' She touts as a virtue what is widely understood to be a vice." *Id*., p. 16.

on plaintiffs motion, but shall be consolidated with that hearing and determined by the court that conducts that hearing." *Id.*, p. 28.

34. According to the memorandum of decision, a trial was to be conducted sometime after October 1, 2019, for the limited purpose of establishing the present value of the Property and the current amount owed by the Debtor under the note.[13] *See id.*, pp. 27–28.

35. On November 18, 2019, just prior to the aforementioned trial date, the Debtor filed the present bankruptcy petition seeking protection under Chapter 13 of the U.S. Bankruptcy Code.

36. Having received notice of the Debtor's present Chapter 13 bankruptcy, Wells Fargo filed a proof of claim with this Court in January of 2020 (*see* Proof of Claim 5-1), to which the Debtor objected, arguing that Wells Fargo was not the holder of the note and did not have standing to file said claim or, in the alternative, that the debt had been discharged in a prior bankruptcy (ECF Nos. 46, 47).

37. At both the April 23, 2020 hearing on the Debtor's objection to Proof of Claim 5-1 and the June 9, 2020 hearing on the present motions, the Court canvassed the Debtor with respect to the origin of the claimed debt, her arguments that Wells Fargo's claim had been discharged in her 2009 Bankruptcy Case, the value of the mortgaged property, when the last payment was made on the mortgage and whether any adequate protection payments had been made to Wells Fargo during the pendency of this case. *See* ECF No. 71.

38. In response, the Debtor stated that she engaged in some sort of consumer transaction whereby she borrowed money to acquire the Property, Wells Fargo procured the note

---

[13] According to statements made by counsel for Wells Fargo on the record during the April 23, 2020 Hearing before this Court, the trial in the Foreclosure Action was to take place on or around November 19, 2020.

through some method of fraud, the last payment on the mortgage was in 2008, by her own estimation, the Property is now worth approximately $160,000, she has not made any adequate protection payments on the mortgage during the pendency of this case and her current income is derived solely from social security benefits.

### III.    JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a) and (b)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

### IV.    DISCUSSION

Wells Fargo now seeks dismissal of the Debtor's bankruptcy petition for cause due to "bad faith," as evidenced by the Debtor's continued efforts to frustrate the Foreclosure Action and her inability to effectuate a confirmable plan of reorganization. ECF No. 91, Motion to Dismiss with Prejudice, pp. 1-2. Upon those contentions that have been asserted by Wells Fargo and the Court's own review of the record, the circumstances of this case have led the Court to examine the Debtor's alleged lack of good faith under Section 1307(c). Section 1307, which governs conversion or dismissal of Chapter 13 cases, provides:

> (b) On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.
>
> (c) Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause….

11 U.S.C. §§ 1307(b)–(c). Although not expressly enumerated in the statute, "it is well established that lack of good faith may also be cause for dismissal under § 1307(c)." *In re*

11

*Prisco*, 2012 WL 4364311, at *4 (N.D.N.Y. 2012); *see also Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 379, 127 S. Ct. 1105, 166 L. Ed. 2d 956 (2007). In determining whether a debtor has pursued actions in a case that would warrant conversion or dismissal for lack of good faith, a court must review the totality of the circumstances. *In re Lin*, 499 B.R. 430, 435 (Bankr. S.D.N.Y. 2013); *see also In re Leavitt*, 171 F.3d 1219, 1224 (9th Cir. 1999). "The totality of the circumstances should take into consideration whether the debtor has abused the 'provision, purpose or spirit' of the Bankruptcy Code and whether the filing is 'fundamentally fair' to creditors." *In re Armstrong*, 409 B.R. 629, 634 (Bankr. E.D.N.Y. 2009) (*citing In re Love*, 957 F.2d 1350, 1357 (7th Cir.1992)).

Factors that courts have considered in determining whether a debtor has failed to pursue a Chapter 13 bankruptcy in good faith are "whether the debtor was forthcoming with the court, whether the debtor accurately stated facts, debts, and expenses, whether the debtor misled the court through fraudulent misrepresentation, how the debtor's actions affect creditors, and whether the debtor has abused the purpose of the bankruptcy code." *In re Lin*, *supra*, 499 B.R. at 436 (citing *In re Klevorn*, 181 B.R. 8, 11 (Bankr. N.D.N.Y. 1995)). "The determination of whether a debtor filed a petition or plan in bad faith so as to justify dismissal for cause is left to the sound discretion of the bankruptcy court." *In re Prisco*, 2012 WL 4364311, at *4. Where a party calls into question a debtor's good faith and meets their initial burden of showing cause for dismissal, the burden shifts to the debtor to prove her good faith. *See In re Lombardo*, 370 B.R. 506, 513 (Bankr. E.D.N.Y. 2007) (*citing In re Tamecki*, 229 F.3d 205, 207 (3rd Cir. 2000).

Critically, there is nothing in the language of Section 1307(c) of the Bankruptcy Code that prevents a bankruptcy court, upon dismissal of the debtor's bankruptcy case, from sanctioning a debtor for misconduct occurring during the pendency of the case. *See Marrama*,

*supra*, 549 U.S. at 374–75 ("[n]othing in the text of either § 706 or § 1307(c) [or the legislative history of either provision] limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor."). Where there is sufficient cause, the imposition of a dismissal with prejudice under the authority of Section 105(a) and Section 349(a) is necessary to prevent the abuse of a Chapter 13 case. *See In re Smigelski*, 2012 WL 1569617, at *2 fn 4 (Bankr. D. Conn. 2012) ("While there is clear authority under § 105(a), courts have also used § 349 . . . to implement sanctions for abusive bankruptcy agendas. Although [S]ection 349 establishes a presumption of non-prejudicial dismissal except where [Section] 109(g) explicitly imposes prejudice, it allows the court to rebut that presumption and attach prejudice to the dismissal order where 'cause' exists.").

Furthermore, *in rem* relief is available pursuant to 11 U.S.C. 362(d) when, among other things, "a creditor has demonstrated that the bankruptcy petition was filed as part of a scheme to delay, hinder, and defraud creditors," *In re O'Farrill*, 569 B.R. 586, 591 (Bankr. S.D.N.Y. 2017), and involves multiple bankruptcy filings affecting real property, *In re Muhaimin*, 343 B.R. 159, 167 (Bankr.D. Md. 2006). Bankruptcy courts may "infer an intent to hinder, delay, and defraud creditors from the fact of serial filings alone." *In re Procel*, 467 B.R. 297, 308 (S.D.N.Y. 2012) (citation omitted); *see also In re Magnale Farms, LLC*, No. 17-61344, 2018 WL 1664849, at *6 (Bankr. N.D.N.Y. Apr. 3, 2018) (explaining a court can "draw a permissible inference of a scheme to hinder, delay, and defraud based on the mere timing and filing of several bankruptcy cases."); *In re Montalvo*, 416 B.R. 381, 387 (Bankr. E.D.N.Y. 2009) (recognizing the timing and sequencing of the filings significant to finding a scheme to hinder, delay, or defraud).

In the present case, the totality of the circumstances, as set forth in Part II of this Decision, supports the conclusion that good and sufficient cause exists to dismiss the present case with prejudice and to find that the Debtor's serial bankruptcy filings were not made in good faith, but rather, that they were filed to hinder, delay, or frustrate creditors, in a blatant abuse of the bankruptcy process. *See In re Lin*, 499 B.R. at 436; *see also* 11 U.S.C. § 362(d)(4). Most glaringly, the timing and sequencing of the Debtor's bankruptcies, most of which preceded critical dates in the Foreclosure Action (often by a number of days), in addition to her repetitive and unsuccessful attempts to relitigate her failed claim that the holder of the note lacked standing to foreclose or that the secured interest in the Property had been extinguished, is a genuine indicator of bad faith. *See In re Procel*, *supra*, 467 B.R. at 308.

The Court further finds that the Debtor was not entirely forthcoming with the Court with respect to material facts relevant to this case. Specifically, she failed to accurately represent the nature of her debts and the relevant dispositions in prior proceedings relating to the Property. By way of example, the Debtor's present claim that any secured interests on the Property were extinguished is betrayed, not only by the recent state court ruling finding that this was claim without merit and by the limited relief granted by the New York bankruptcy court as to the Debtor's Motion to Reopen 2009 Bankruptcy Case, but also by her own filings in the 2009 and 2014 Bankruptcy Cases, which clearly indicate that *she acknowledged that some portion of the debt was secured by the Property*. The Court further notes that according to those same filings and the Debtor's own statements on the record, the represented value of the Property varies wildly from $160,000 to $630,000. These facts count heavily against the Debtor's present claims of good faith and against her general credibility on the whole. *See In re Lin*, *supra*, 499 B.R. at 436–37.

Lastly, the contours of the Debtor's proposed Chapter 13 Plan are highly indicative of bad faith. As the Chapter 13 Trustee points out, and the Court independently concludes after a review of the Chapter 13 Plan, the Debtor's Chapter 13 Plan is patently infeasible, and would appear to violate multiple provisions of the Code. *See* ECF No. 106. Despite the present allegations of bad faith, the Debtor admits that no adequate protection payments have been made to Wells Fargo during this case and that the last mortgage payment on the Property was made in 2008. *See* April 23, 2020 Hearing, ECF No. 71; *see also* 11 U.S.C. § 362(d)(1). While the Debtor states that the last time she made insurance and property tax payments on the Property was "probably this year" in the amount of "a couple thousand dollars," Wells Fargo's proof of claim indicates that advances on taxes and insurance total approximately $53,000. *See* ECF No. 124, June 6, 2020 Hearing, Audio Recording at 10:34:15; Proof of Claim 5-1. Moreover, given that it is, in part, the Debtor's own Motion to Dismiss is under consideration, there is no rational argument to be made that the Debtor requires Chapter 13 relief or is prepared to abide by its requirements. For the foregoing reasons, a two-year bar to filing for any bankruptcy relief and *in rem* relief are both warranted here.

As this Court has already noted in its Ruling granting relief from stay to Ocwen in the Debtor's 2014 Bankruptcy Case, "[r]ather than fueling more intractable litigation, closure should be the objective of one with a bona fide grievance." 2014 Bankruptcy Case, ECF No. 116. "A day of reckoning in a court of competent jurisdiction and specialization, in a case that is substantially advanced and well-suited to conclusively address the allegedly unresolved issues, in law or equity, is not just fundamentally fair, efficient and appropriate (as opposed to further delays and multiple litigation efforts), but overdue. . . . The State Court is uniquely positioned in these circumstances to hear and decide any remaining issues which would justify or preclude the

entry of a final judgment of foreclosure in the Movant's favor." *Id*. It is as true now as it was then.

    V.    CONCLUSION

After a thorough review of the record and the Debtor's conduct in the Foreclosure Action, her 2009 Bankruptcy Case, her 2014 Bankruptcy Case, and the present bankruptcy case, in addition to the arguments advanced in the pleadings and at hearings held before this Court, the Court finds that, under 11 U.S.C. §§ 109(e), 1307(c), 349(a) and 105(a), cause exists to dismiss the Debtor's case with a two-year bar to refiling. *See In re Casse,* 219 B.R. 657, 662 (Bankr. E.D.N.Y. 1998), *subsequently aff'd,* 198 F.3d 327 (2d Cir. 1999). The Court also finds that, in addition to a two-year bar, *in rem* relief is also warranted under 11 U.S.C. §§ 362(d)(1) and (d)(4)(B); Accordingly, it is hereby

**ORDERED:** Pursuant to Sections 349(a) and 105(a), the Debtor is barred from filing for relief under any chapter of the Bankruptcy Code, in any bankruptcy court, for a period of not less than two (2) years from the date of entry of this Order; and it is further

**ORDERED:** The automatic stay provided in 11 U.S.C. § 362(a) is modified pursuant to 11 U.S.C. §§ 362(d)(1) and (4) to permit Wells Fargo and/or its successors and assignees, to exercise their rights, if any, with respect to real property commonly known as 187 South Canterbury Road, Canterbury, CT 06331, in accordance with applicable non−bankruptcy law; and it is further

**ORDERED:** To the extent there exists a co−debtor, the automatic stay pursuant to 11 U.S.C. § 362(a) and the fourteen (14) day stay provided in Fed. R. Bankr. P. 4001(a)(3) are modified to allow Wells Fargo and/or its successors and assignees to enforce its interests in the real property against such co−debtor; and it is further

**ORDERED:** Wells Fargo and/or its successors and assignees is granted *in rem* relief from the automatic stay as to the real property commonly known as 187 South Canterbury Road, Canterbury, CT 06331(the "Property"), based upon the findings that the Wells Fargo's claim is secured by an interest in the Property, and that pursuant to 11 U.S.C. § 362(d)(4), the filing of the Debtor's petition was part of a scheme to delay, hinder, or defraud creditors that involved multiple bankruptcy filings affecting the Property pursuant to 11 U.S.C. § 364(d)(4)(B); and it is further

**ORDERED:** In accordance with 11 U.S.C. § 362(d)(4), if this Memorandum of Decision is recorded upon the land records in compliance with applicable State laws governing notices of interests or liens in real property, this Memorandum of Decision shall be binding in any other case under this title purporting to affect such real property filed not later than two years after the date of the entry of this Memorandum of Decision, except that the Debtor in a subsequent case under this title may move for relief from this Memorandum of Decision based upon changed circumstances or for good cause shown, after notice and hearing, *see* 11 U.S.C. § 102(1). Any Federal, State or local governmental unit that accepts notices of interests or liens in real property shall accept a certified copy of this Memorandum of Decision for indexing and recording; and it is further

**ORDERED:** The fourteen (14) day stay provided in Fed. R. Bankr. P. 4001(a)(3) is hereby waived for good and sufficient cause.

**IT IS SO ORDERED** at Hartford, Connecticut this 24 day of June 2020.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut